UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

KIMBERLY LAWSON, individually
and as Trustee for the Next of Kin of
Zacharias Lawson, deceased,

      Plaintiff,             **MEMORANDUM OF LAW & ORDER**
v.                                Civil File No. 10-3863 (MJD/FLN)

SOUTH METRO HUMAN SERVICES,
a Minnesota Non-Profit Corporation,

      Defendant.
_____

Brian N. Steele, Steele & Associates PLLC, and Heidi E. Viesturs, Viesturs Law Office PLLC, Counsel for Plaintiff.

David L. Hashmall and Grant T. Collins, Felhaber, Larson, Fenlon & Vogt, P.A., Counsel for Defendant.
_____

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted Pursuant to Rule 12. [Doc. No. 24]  The Court heard oral argument on April 15, 2011.

## II.    FACTUAL BACKGROUND

1

Defendant South Metro Human Services ("South Metro") is a Minnesota non-profit corporation. (First Am. Compl. ¶ 7.) Plaintiff Kimberly Lawson is a resident of Texas, and was married to Decedent Zacharias Lawson. (Id. ¶ 6.)

Zacharias Lawson required medications for mental health issues and physical health issues. (Id. ¶ 11.) In May 2007, Mr. Lawson was hospitalized for failing to properly manage his medications. (Id. ¶ 12.) Mr. Lawson's psychiatrist recommended that the County Attorney pursue civil commitment. (Id. ¶ 13.) A commitment hearing was held on June 20, 2007. (Id. ¶ 14.) The attorneys, a Hennepin County Medical Center employee, and a team from South Metro met and agreed "that the commitment would be continued for 90 days if decedent agreed to wellness checks and medication monitoring" provided by South Metro. (Id. ¶ 15.)

The complaint alleges that South Metro was to bring Decedent his medication every day or at least five days a week. (Id. ¶ 16.) It further alleges that Defendant agreed to check on Decedent "every day or almost every day during the 90 day commitment stay period." (Id. ¶ 17.)

On August 17, 2007, a South Metro representative conducted a face-to-face visit with Decedent. (Id. ¶ 18.) Plaintiff then asserts that Defendant failed to

make contact with Decedent from Aug. 18, 2007 until Decedent was found dead on Aug. 23, 2007. (Id. ¶¶ 19 - 28.) Defendant attempted to make contact with Decedent on Aug. 22, 2007, but Decedent did not answer the door or telephone. (Id. ¶ 27.)

When Decedent's body was found on Aug. 23, 2007, it was badly decomposed, so the medical examiner could not definitively determine a cause of death. (Id. ¶ 29.) Plaintiff asserts a Hennepin County medical examiner did determine that diabetic ketoacidosis was the likely cause of death; however, other causes could not be ruled out. (Id. ¶ 30.)

Defendant submits the final Hennepin County Medical Examiner's Office Autopsy Report, which lists the final diagnoses as natural causes and lists schizophrenia, history of diabetes mellitus, ketoacidosis, arteriosclerotic heart disease, and hepatomegaly with steatosis as diagnoses under the category of natural causes. The autopsy report also lists acute ethanol intoxication as a final diagnosis.

On August 16, 2010, the Hennepin County District Court appointed Ms. Lawson as trustee to maintain an action for the wrongful death of Decedent. (First Am. Compl. ¶ 9.)

On August 17, 2010, Plaintiff sued South Metro in Hennepin County District Court. On September 7, 2010, Defendant removed the action to this Court based on diversity jurisdiction. Plaintiff then filed the First Amended Complaint. The First Amended Complaint alleges: Count I: Wrongful Death and Count II: Negligent Spoliation.

Defendant now moves to dismiss the First Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.   DISCUSSION

### A.   Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

Defendant has submitted three exhibits in conjunction with its motion: the autopsy report, a transcript of Decedent's commitment hearing, and Defendant's progress notes for Decedent. While the complaint discusses a Hennepin County medical examiner's opinion, it does not explicitly mention the autopsy report. The complaint discusses the commitment hearing, although not the transcript. It mentions information that may have been gleaned from the progress notes, but does not mention the notes. The Court has not relied on any of these pieces of evidence in reaching its decision because the outcome of this motion to dismiss would be identical whether or not this evidence is considered.

### B.    Wrongful Death Claim

Plaintiff asserts that Defendant was negligent in the care and treatment of Decedent, which caused his death. To establish a claim of negligence under Minnesota law, a plaintiff must prove four elements: "(1) the existence of a duty

5

of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury." Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001) (citation omitted).

### 1. Duty of Care Owed to Decedent

Generally, the existence of a duty of care is a question of law. Louis, 636 N.W.2d at 318. "A person generally has no duty to act for the protection of another person. The existence of a legal duty to act depends on two factors: (1) the relationship of the parties, and (2) the foreseeability of the risk involved." Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999) (citations omitted).

"Typically, the plaintiff is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare." Laska v. Anoka Co., 696 N.W.2d 133, 138 (Minn. Ct. App. 2005) (citation omitted). "A special relationship may arise when one individual's safety has in some way been entrusted to another and that the other has accepted that entrustment. A special relationship may also arise where one accepts responsibility to protect another, although there was no initial duty." Id. (citations omitted).

Plaintiff alleges that, based on South Metro's agreement at the commitment hearing, South Metro owed Decedent a duty to conduct daily or almost daily wellness checks during the 90-day period. (First Am. Compl. ¶ 17.) She also asserts that Defendant had a duty "to conduct daily welfare checks on decedent and to carefully monitor his wellbeing." (<u>Id.</u> at ¶ 36.) The duty South Metro owed Decedent encompassed the obligation to conduct blood sugar monitoring. (<u>Id.</u> ¶ 33(h).)

Defendant contends that no duty exists to conduct blood sugar monitoring, to intervene and seek treatment in light of Decedent's medical history, or to act as his primary medical care provider. Defendant contends that its role was limited by the settlement agreement reached at the commitment hearing. However, taking the facts alleged in the First Amended Complaint as true, as part of that agreement made at the commitment hearing, Defendant had an obligation to conduct daily or almost daily checks on Mr. Lawson to monitor his wellbeing. Even if the Court did consider that transcript of the commitment hearing in reaching its decision, the decision would be the same. The transcript does not specify all of the responsibilities Defendant owed to Decedent and does not discuss what was required as part of the wellness checks. At this point, with

7

no context and no indication of whether additional information defining the contours of the settlement exists, the definition of the obligations created by the settlement, as set forth in the submitted transcript, is ambiguous. Plaintiff has plausibly pled a duty.

### 2.     Breach of the Duty of Care

In order to state a claim for negligent wrongful death, Plaintiff must plead enough facts to show that Defendant breached the duty of care owed to Decedent. The breach of the duty is dependent upon what duty of care Defendant owed Decedent.

Plaintiff alleges that Defendant breached the duty of care by not performing the daily or almost daily checks on Decedent. (First Am. Compl. ¶ 33.) Plaintiff further alleges that Defendant failed to conduct blood sugar monitoring. (Id. ¶ 33(h).) Finally, Plaintiff claims that Defendant failed to intervene and seek treatment for Decedent in light of his medical history. (Id. ¶¶ 33(i).) As the Court has found, Plaintiff has adequately pled that Defendant had a duty to check on Decedent almost daily and provide wellness checks. She has further plausibly pled that this duty included monitoring Mr. Lawson's blood sugar. Finally, she has pled that Defendant did not perform those tasks.

### 3.     Injury

Plaintiff has adequately pled an injury by pleading that Decedent died.

### 4.     Proximate Causation

Under Minnesota law,

> [t]here is proximate cause between a negligent act and an injury when the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others. A plaintiff must also show that the negligent conduct was a substantial factor in bringing about the injury. While the existence of proximate cause is usually a question of fact for the jury, when reasonable minds could reach only one conclusion, it is a question of law.

Lietz v. N. States Power Co., 718 N.W.2d 865, 872 (Minn. 2006) (citations omitted).

The complaint alleges: "Had defendant monitored Mr. La[w]son in keeping with the standards of care, defendant would, more likely than not, have been able to treat or initiate interventive care. Had such monitoring, treatment, and/or interventive care been initiated, Zacharias Lawson would not have died." (First Am. Compl. ¶¶ 34–35.)

Defendant argues that, because the cause of Decedent's death is unknown, there is no way to determine how Defendant could have prevented Decedent's death. It relies on the fact that the autopsy report states the Mr. Lawson died of

9

natural causes and does not list a primary cause of death, but rather lists a number of significant diagnoses, including ketoacidosis, acute ethanol intoxication, schizophrenia, and diabetes.

At this stage, the Court accepts the allegations in the complaint as true. The First Amended Complaint alleges that diabetic ketoacidosis "was the likely cause of decedent's death." (First Am. Compl. ¶ 30.) While Plaintiff purports to have obtained this information from "[a] Hennepin County medical examiner," she does not explicitly rely upon the medical examiner's autopsy report. Therefore, at this stage in the litigation, the fact that Defendant has submitted an autopsy report that does not support the allegation in the complaint does not make the complaint insufficient as a matter of law. Whether the claim that diabetic ketoacidosis likely caused Decedent's death is supported by the evidence is an issue to be decided at a later point.

Based on the complaint, ketoacidosis was the likely cause of death and this cause of death would have been prevented if Defendant had conducted almost daily wellness checks and monitored Decedent's blood sugar.

### C. Negligent Spoliation

The Court dismisses Count Two because Minnesota does not recognize an independent tort for negligent spoliation of evidence.  See Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 435, 439 (Minn. 1990).  See also Integrity Floorcovering, Inc. v. Broan-Nutone, LLC, 521 F.3d 914, 917 (8th Cir. 2008) (noting that decisions of the Minnesota Supreme Court are binding on substantive issues of state law).

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted Pursuant to Rule 12 [Doc. No. 24] is **GRANTED IN PART** and **DENIED IN PART** as follows: Count One **REMAINS** and Count Two is **DISMISSED**.


Dated:   April 26, 2011				s/ Michael J. Davis
						Michael J. Davis
						Chief Judge
						United States District Court